So would both attorneys that are going to argue this case please step up to the podium and identify yourselves for the record? Good morning, Your Honors. I'm Arianne Stein on behalf of Bernard Williams. Ms. Stein, good morning. Good morning, Your Honors. Dan Pivovarczyk on behalf of the people of the state of Illinois. Counsel, good morning to you. Each of you will have about 15 minutes to present oral argument from that. Ms. Stein, you can save out some time for rebuttal. All right? You may be seated. Thank you. May it please the Court. At the third stage hearing, Williams made a showing of actual innocence through newly discovered evidence that would have undermined the state's entire case against him. This Court noted in its previous decision that the evidence at trial was not overwhelming, where there was no physical evidence tying Williams to the scene, and where the only witness who identified Williams is now recanted. The new evidence was of such conclusive character that it would probably change the result on retrial. And why do you say that? Well, in analyzing the evidence from the hearing, the trial court must consider whether the new evidence places the evidence presented at trial in a different light and undercuts the confidence in the guilty verdict. And the trial court here did not assess the evidence under that standard. What standard did he use? He used the standard that the defendant had to prove by preponderance of evidence a claim of actual innocence and that whether the new evidence would probably change the result on trial. That's the phrasing that was used in the opinion by the judge. And that's wrong? I believe that phrasing is accurate, but I don't believe the judge applied the evidence correctly using that standard, that his decision was manifestly erroneous when looking at the evidence. And what does manifestly erroneous mean under the law? It's error which is clearly evidence, plain, and indisputable. All right. So if you would, give us a case that you think would accurately describe, you know, clearly evidence, some case that you think is eye-off-course with this one. I think that there are a few cases from the Illinois Supreme Court that have granted a new trial after a third-stage hearing. How many? There's Coleman and Burroughs and Ortiz. There's also a Starks case which has a little bit of a different situation because there was DNA evidence there. Yeah, but in Ortiz, the witness said who the shooter was. And in this case, the witness didn't say who the shooter was. So Smith has testified that he knew Williams beforehand, he knew Williams from the neighborhood, and that he saw the shooters and Williams was not a shooter. He said that he wouldn't be willing to – Yeah, but he didn't say who the shooter was. That's true. He said he didn't know who the shooter was, but that he thought he would be able to – Well, he said he didn't know the shooter, so that's correct. He didn't specifically say the names of the shooters. But wasn't there testimony, though, that he made some remarks just before the two young offenders came up and he referred to them as a certain gang? That's true. That was what Nash testified to below a trial. However, Nash has recanted that testimony. What did this court say about Nash in the most recent decision? Well, this court said that the investigator's affidavit that interviewed Nash wasn't sufficient to move the case forward to a third-stage hearing, but some of those concerns have been alleviated now because Nash has now signed a statement and he's also testified at the third-stage hearing. Also, even if we – Well, what did we say? I wasn't on that decision, but what did we say about Nash? Generally, recantations are unreliable. But again, part of the problem with Nash's recantation was that he hadn't signed an affidavit, whereas now he has and he's testified. But did the law change about recantations? No, but there are cases where the Illinois Supreme Court has reversed even when witnesses have recanted. Okay. Well, which ones are those? In the Burroughs case, the witness recanted, and she testified actually very similar to Nash. She said that as part of her drug rehabilitation program, she wanted to be accountable to those she had harmed, and that's why she was now providing the true testimony. So does Burroughs – would that be the case that you think most closely resembles a manifestly erroneous decision here? With regards to Nash's testimony, yes. Well, I'm just saying, what case would you suggest most strongly resembles that this trial judge manifestly erred? I would say Ortiz and Pullman, I would say, are both cases that would show that. Well, Ortiz, I think we said, at least at this appellate court level, that in that case, the trial judge who did the hearing incorrectly determined the standard in the first instance. And he said that the evidence was merely cumulative. Don't you recall that? The trial judge was calling something cumulative that was absolutely not cumulative, because there the eyewitness, who was unrelated to anyone, had no connection to anybody, came forward ten years after the fact. He was living in Wisconsin, and he indicated why he was coming forward. He wasn't friends with anybody, and he actually said who the offender was, that it wasn't Ortiz. That's correct. But the trial judge said, oh, this is just cumulative. And it really wasn't cumulative at all, because he was contradicting what two eyewitnesses had said, who were also recanted. Right. And I don't believe that Smith's testimony at the third stage hearing is cumulative either, which is what this court would have agreed with at the second stage as well. Well, Smith is a little different than the witness in Ortiz. Wouldn't you agree? A little bit different. But if nothing else, the trial judge here specifically said he didn't believe Smith. Didn't he say that? Didn't he say that he thought Nash and Smith were both incredible? That is true, but he didn't really finish the analysis by looking at whether those ordinary credibility issues would still have made the trial evidence appear to be in a different light and undermine the verdict. So you think he has to say this out loud in order for us to determine whether or not he used the appropriate standard? He doesn't have to say it out loud, but I think through his analysis and through what we can see from the evidence at the third stage hearing that he was manifestly erroneous in coming to that conclusion. Is that a more difficult burden for you when a judge makes specific credibility findings? It can be. I suppose it – In Coleman, do you remember that case? Yes. Was that the one where there were four or five offenders who said that the defendant had absolutely nothing to do with the crime? That's correct. However, in that case, all of those offenders had ordinary credibility issues like Smith. For instance, many of them had pliers. What other case can you think of, really, that's ever been reported where four defendants actually testified at a hearing and said, this guy had absolutely nothing to do with what we did? Is there any other case like Coleman? Not that I'm aware of, Your Honor. And in that case, wasn't there a young eyewitness, a woman, who actually confused the defendant that she knew of someone – I forget the nickname. Do you remember that? Yes. I believe there were two witnesses who identified the defendant at trial, and one had a slight problem with her testimony. But there was still that other witness who was left who identified the witness at trial. And although there were four witnesses who testified at the third stage hearing, all of those witnesses admitted that they were friends with the defendant. In this case, Smith is not friends with Williams. He has no motive to help him now. How do we know that? What was his motive for not ever being involved in the first instance? Well, he has said that he was – he did speak to the police, but he didn't tell them whether Williams was or wasn't a shooter. He was in a gang, and he didn't want to come forward and have any contact with the police or the case. So he would let someone sit for – how many years are we talking? That's true, Your Honor, although he didn't necessarily know definitively that Williams had actually been convicted. I thought he said that he knew about it after a year or two. I think it was a year or two later that he said he thought he was convicted, but that doesn't mean he necessarily knew who he could get a hold of to change that. And he was in a gang at the time. He might not have wanted to have any contact with the police or the state, which is understandable. He was 28 at the time of – Yeah, didn't he also say that the shooter – the shooters were about 16? He did, which is close to what Williams' age was at the time of the event. But then didn't he also say that Williams was his age? He did, but this is not a stranger identification. If he's identifying a stranger and he gets the age – But he said he knew Williams, and he said he was the same age as he was, about the same age. He said he was two to three years younger. He said he was around his age or two to three years younger. Right, so he was 28 when this whole thing happened, wasn't he? It's possible that he misjudged. Perhaps Williams at 17 looked a couple years older. Well, we're talking about a decade, aren't we? He was 28, and the – And Williams was 18 or 19 at the time of this, or 17? I believe it was 17 at the time of the event. Right. 19 at the time of the event. But it's still not a stranger identification. He knew Williams. So even if he misjudges his age or even other physical characteristics, he says, I know this person. I've seen him at his family's store in the neighborhood. So at a stranger identification, that kind of age difference might be more significant. But in this case, with Smith's testimony, it's not as significant. What about the testimony from the two different state's attorneys at trial? Didn't they say that they went into a room and that the defendant said to them that he had already discussed his participation in the murder and he wasn't going to talk to them without a lawyer? He said whether he used the word participation in the murder, we don't have the exact quote of what he said, but that he said he had already talked to Detective Cato and he wasn't going to make a statement. He didn't want to talk to them. What did he say then? If you don't know what he said, what do you believe he said? When he talked to those two, there was a man and a woman. Well, he talked to the detectives, and Detective Cato did testify that this was a revenge motive that Williams. Should we believe anything that Detective Cato said? Well, there are certainly suspicious circumstances around giving the statement itself because he wouldn't give it to the state's attorney. Isn't he a proven liar? Yes, there are many claims. Do you get that in your brief? Do you rely on that in any way, shape, or form in your brief? Other than a footnote where you say something about an article that is not part of the record. Right, other than that. And the state has asked us to strike that. Right, other than that article, no, it didn't come up at trial at all. It's certainly something that if there's a new trial granted, he could be cross-examined about. Do we make credibility determinations here? Is that part of our job? Well, I think the courts in other Illinois Supreme Court cases where a new trial has been granted, they determine whether the witnesses were credible and whether or not. I'm not sure about that at all. I don't think there's any case that says that the appellate court or the Supreme Court starts reviewing credibility determinations. Our job on review is to determine whether the trial judge manifestly erred in his findings. We don't review this testimony and say, he's telling the truth, she's lying. No, we decide whether or not the trial court used the appropriate standard of review. But we don't make determinations about credibility here. That's not what this case is about or any case that I'm aware of. So I don't think that we're here to make credibility determinations. That's true, but I still think. But isn't a credibility determination when courts have already said that Officer Cato has abused people in obtaining confessions and there's been dozens and dozens of cases where he has been found to have done illegal things in the confession process? No, Your Honor, that's true. Dozens and dozens? I don't have the exact number, but there are several allegations lodged against Sotokia Cato. But again, that is not in this record. You didn't rely. We don't get to go outside the record and start documenting things that aren't in the record, do we? No, that's true, Your Honor. Oh, there are certain things that the state also didn't bring up. Yeah, but we have to take into consideration when a police officer is a known liar. That's true, and that wouldn't take a credibility determination. You mean we're supposed to take into consideration things outside the record to make a decision in this case? The court could take judicial notice of information in the article, and certainly even if we don't take into account... If it's not part of the record, what case says that the appellate court can start taking judicial notice of things outside the record in a post-conviction case? What case says that? I'm sorry, I don't have a case in front of me, Your Honor, but do you think there's a case that says that, that the appellate court can start taking judicial notice of things outside the record in a post-conviction proceeding? Yeah, but there may not be a case on everything. Well, actually, the last time I thought we looked, we usually rely on legal authority, don't we? Yes, Your Honor, that's true. I do know cases where the court is allowed to take judicial notice of... Sure, we can take judicial notice, but we don't go outside the record and start pulling things from wherever anybody wants on a post-conviction proceeding. It's a statutory proceeding. It's governed by the language of the statute, and I'm not aware of any case law that allows us to do that. That's true, Your Honor, but even if we disregard that outside information about Detective Cato, the circumstances surrounding the supposed confession were still suspicious, as this Court noted in its previous opinion. Although Detective Cato testified... Did the trial judge in any way, shape, or form even discuss the confession in this case? No, I don't believe his opinion did. He never even concerned himself with the statement. He concerned himself with the witnesses that testified at the evidentiary hearing. Right, and that's, in some respects, part of the problem, that he didn't weigh that evidence against the evidence that was presented at trial. For example, the trial courts didn't realize that there were problems with Nash's testimony at trial. The state now says that Nash, at the third state hearing, was vague and contradictory, but his testimony at trial concerning the key issue of identification was also vague and contradictory. On direct examination, Nash said he was behind the tavern facing west when he saw the shooters. However, on cross-examination, he said he was in front of the tavern with his son facing east when he saw the shooters run by. So this vague and contradictory testimony on the key issue of identification actually shows that Nash's testimony at the third state hearing was really more reliable, that he did not see the shooters. For these reasons, Williams requested this court grant a new trial. All right. Thank you. Good morning, Your Honors. Once again, Dan Pivovarczyk on behalf of the people. Justice McBride, you identified the defining aspects of this case. Well, did the judge use some sort of strange language when he entered his finding here? What kind of burden of proof did he say that the petitioner had? His language, and I disagree with opposing counsel, describes exactly the standard that is supposed to be applied. And it's on page 19 of this thorough 21-page written decision by the trial court where he says, when considering Smith's testimony along with the other evidence presented during the trial, such as motive identification testimony undisturbed by Powell's instant testimony and an admission to the police, Smith's testimony is not conclusive, especially given his lack of credibility. Accordingly, this court finds that Smith's testimony, asserting that the petitioner was not the shooter, was not of such a conclusive character that it would probably change the result on retrial. That is exactly the question that this court remanded to the trial court to determine. And it's important not to lose sight of that because that was. This isn't really what you would call a strong case for the state at trial, is it? I certainly don't think that this court ever found that it was not overwhelming evidence as was characterized by opposing counsel. I don't think that's in this court's previous decisions. Okay, I'm not asking what our previous decisions were. What I'm asking is that this is basically a single eyewitness case and nothing more, isn't it? Well, there's also a confession, but it won't be just a single eyewitness. There was an oral statement that was recorded later in some supplemental report, but the defendant testified at trial. And he said that he never gave a statement. He continually asked for an attorney, and that was his testimony. So you have an eyewitness and then you have Detective Cato saying he gave a statement. And then you have, oh, so do you know what the defendant said to the state's attorneys? Absolutely, Your Honor. What? This testimony is from two witnesses, Detective Cato as well as Assistant State's Attorney Dorner. And they both say that when the ASA came to the area and attempted to interview the defendant, the defendant told him that he had already told the detective about his participation in the incident. And so he was only going to talk to the Assistant State's Attorney if he had his own lawyer present. So he used the word participation? He used the word participation. At trial. That's a direct quote from the ASA's testimony. Well, what did he say? What did the defendant say? Yeah. At trial, he said he never admitted anything. He always asked for the lawyer, right? Right. And so this word participation is used by Dorner. And Detective Cato. Okay. Well, whatever. I was just trying to figure out what was – where did that word participation come from? It came from Dorner. That's correct, Dorner. I thought there was another woman, Assistant State's Attorney testified at trial, Kruger or something or no? So there was another detective who testified about the confession. So the defendant used the word participation. In the testimony of ASA Dorner. And that's really important, as Your Honors clearly understand. How much education did this defendant have? I do not, off the top of my head, know. But he certainly – Would he use a word like participation? Would he even know what that word meant? I think so, Your Honor. Well, I thought we already agreed that that was Dorner's take on it. Dorner said that the defendant said he had already talked to Cato about his participation. There's no issue about what the defendant said. I never told him anything. At trial. I just wanted to know what the word was. And it wasn't the defendant's word. He didn't say that. Dorner said that. So the defendant absolutely could have said, I already told the detective what happened, what I did. I already gave my story. I don't know the exact terminology that was used by the defendant. I do know the terminology that's used to describe that. All right, but so what the defendant could have meant was didn't he initially, according to even Cato, deny anything, any participation in this? Yeah, he gave several false alibis. Well, we don't know if they were false. He admitted they were false. He gave – well, according to Cato. But he initially denied any participation to Cato. Isn't that Cato's testimony? He did. That was his first story. When the state's attorney said that, what the defendant could have been meaning was that he already talked to Cato about this and he wasn't going to say any more until he talked to his lawyer. He could have been referring to what he initially said is that I didn't have anything to do with this. He could have been, Your Honor. But I think that it's important to keep in mind a couple of things. First is that when the state's attorney spoke to the defendant, that statement, whatever the defendant said, it wasn't zero. It wasn't just lips sealed. And that's what the defendant testified at trial he did. He said, I didn't say anything to anybody other than I want a lawyer over and over again. So the ASA's testimony is something completely different. The ASA's testimony corroborates the testimony of both Detective Warner and Detective Cato. Well, I think that requires a more careful review because Dorner said that the defendant said, I already talked to the detective. Words to that effect. And I don't want to talk without a lawyer. Isn't that really kind of – can't you interpret it that way? Well, that's a fair interpretation which affirms the existence of a prior statement to the detective, which corroborates the detective's testimony and belies the testimony of the defendant who says, my lips were sealed the entire time. It also not only affirms the existence of a prior statement to the detective, it also affirms the truth of them. Because when he's talking to the state's attorney, he didn't say, yeah, I lied to the detectives already. I don't need to talk to you. He said, I already told my story. I already described what happened. I already described my participation. However, his terminology was, after speaking to the detective several times, that's what he said. And the defendant's testimony at trial is something completely different, which is belied by everything. And it also changes in the post-conviction petition. What about this guy, Smith? Why isn't this case like Ortiz? It's not like Ortiz for several crucial reasons. To start out with, this case is absolutely defined by credibility determinations. That's what the remand in this case was all about, is assessing the credibility of Smith. Ortiz had no credibility determinations. As Your Honor very accurately described, the trial court in Ortiz committed manifest error in saying that a new witness was cumulative when it turns out that witness was the opposite of cumulative. That witness was new evidence on a crucial issue at trial. What about Burroughs? Well, in Ortiz, wasn't there credibility determinations? The trial judge didn't believe the witness. I remember the case quite well because you, Justice Gordon, and I were on that. And what happened was Judge Dernbach said that this witness is cumulative to everything that the trial judge already heard. There was no decision about credibility in that case. Judge, I don't have Burroughs in front of me. But what about Burroughs? I don't have Burroughs in front of me. Okay. But I do want to point out that this is a 21-page decision that carefully goes through the evidence and applies it. So while opposing counsel is presenting alternative interpretations that could be applied to the testimony of Smith, that's not the role that needs to be, that's not the role at this point. Alternative interpretations of the testimony doesn't satisfy manifest error. Manifest error is only found where the decision is not based on the evidence, is arbitrary and unreasonable. Well, let's, in this case, you've got one eyewitness, okay? And then you have this alleged statement that the defendant denies making, okay? And this was not a jury. This was a bench trial. And the judge found him guilty, right? Yes. Okay. No physical evidence of any kind. Not that connected him. There were bullets. It corroborates his confession that physical evidence corroborates the defendant's confession. Nothing was connected to him physically, was it? No. No gun was recovered. There was no physical evidence that tied him to this offense. Nor would you expect there to be physical evidence given the circumstances as they played out. The defendant was not caught fleeing the scene. The defendant wasn't caught later that day. So even though this isn't the kind of case where you'd expect physical evidence, the fact of the matter is there is no physical evidence, okay? So now you have this Smith person coming forward saying, well, he's not the guy, although he doesn't say who the guy is, but he says this guy was definitely not the guy. And then you have this Nash person whose real name is Powell, and now he's recanting. So if a jury were to hear this all over again, is there a chance that this case would be presented in a different light? Absolutely, Your Honor. I mean, this case would be stronger at retrial. Why? Because keep in mind, let's put Smith in context. There's two things that this Court in its previous decision recognized absolutely about Smith. One of them is that he was the intended victim in this shooting, and second, that he was an intended prosecution witness who didn't testify at trial because the State couldn't find him. Do those findings have any impact here? It helps put Smith in context. Is it law of the case or anything? No, Your Honor, but what I'm saying is this. There's a reason why the State was looking for Smith, and the reason the State was looking for Smith is that he had a prior identification of the defendant, which would be admissible as substantive evidence under 115.12. That's what happened ten days after the shooting when they finally find Smith. And at a retrial, unlike the original trial where the State couldn't find Smith, now at a retrial, this prior identification of the defendant by Smith ten days after the shooting comes in as substantive evidence. With Powell or Nash, same thing. His photo array identification, admissible as substantive evidence under 115.12. His lineup identification. Speaking about that photo array, didn't the judge have a problem with Nash saying that there was already marks on it when it hadn't even been photographed, wasn't even in existence? Yes, Your Honor. And honestly, I really feel that Nash is a non-issue in this case for a number of reasons, including the fact that this Court didn't remand this case to evaluate Nash's credibility, and this Court did find his jailhouse recant inherently suspect. So, yes, Nash was shown an exhibit that he marked in open court at trial under oath showing who he picked out in a lineup. It was a post-lineup photograph. And then when shown that same exhibit at the third stage hearing, he says, oh, this is evidence that the defendant was framed. This is a picture that was shown to me before I even saw a lineup. But earlier, he's the one that made the mark on it, didn't he? He made the mark in open court at trial, and now he's saying he did it way earlier when he was being coached by the detectives on who to pick out in a lineup. What about this other person? I'm just curious. D'Angelo Johnson? The co-defendant. He was arrested with him, wasn't he? He was. Where is D'Angelo Johnson now? Do you have any idea? Yes. He's serving a lately murder sentence, and he gave a confession very similar to the one that the defendant gave. It was recorded. It was a handwritten, but it was the same. Well, the evidence was a little bit different because he actually gave a statement, didn't he? They both gave statements, Your Honor. Well, I know, but one is handwritten and it was memorialized. That's not the case here. I do want to, while we're on the topic of the confession, Your Honor, address Justice Gordon's concern concerning Detective Cato because this is absolutely crucial. There was never any allegation at any point in this case of coercion or of any kind of involuntary statement. There's two versions that the defendant gives about that statement. One is the trial version where he says that his lips were sealed and he just asked for a lawyer over and over again and gave no statement. Then in the post-conviction petition that he writes out, he says that the confession I gave shouldn't have come in because I asked for a lawyer first. Those are what the defendant is saying. Nowhere in there is ever there any allegation consistent with the innuendo about Detective Cato that's cited in the defendant's brief, and I do renew my request to strike those references to matters that are outside of this record. But there have been cases by this panel involving Cato where we have said that he cannot be believed, and here he said there was a confession and the defendant said he never gave a confession. So there's a question of who's telling the truth. Keep in mind, Detective Warner testified in rebuttal in that bench trial. Detective Warner happened to be at the area at the time when this investigation was taking place. She just heard the defendant knocking on the door. Cato's partner was, I believe, Cerrone. Warner was just at the area when Detective Cato and his partner were on the street. Warner, she responds to the defendant when he's knocking on the door. She answers it, and he says, I'm ready to tell the truth now. Detective Cato and his partner come back to the area, and it's Detective Warner who goes with Detective Cato in and talks to the defendant, and that's when the defendant comes off of his second alibi, the one where he says he's innocent but D'Angelo Johnson probably did it. He comes off that one and says, yeah, I was involved with it as well, and he gives, honestly, a detailed, albeit oral, but it's a detailed confession that is corroborated by the physical evidence. It also fits with... So we should write that sometimes Officer Cato tells the truth and other times he doesn't. Is that what we should say? Judge, I'm not familiar with those matters outside of the record. I take your honor at your word concerning those prior decisions. I don't have any knowledge of that, but I do know in this record this confession isn't based on just one witness. There's three witnesses that help establish this oral confession, and if it were a written confession, there would still be arguments about it. The fact that it's an oral confession doesn't really eliminate the fact that we would have to discuss this. And so I do want to go back to Ortiz for just one minute, because there's an important distinction to be drawn between the actual innocence witness in Ortiz, Mr. Hernandez, who really was the real deal in terms of an actual innocence witness, and Smith and Nash here, because what you have with Hernandez is someone who is unknown to the police during the investigation. He was never interviewed by the police. He ends up being in Wisconsin for a decade and happens to come home to Chicago, talk to the defendant's mom, and then after talking to the defendant's mom, then he has to find a friend to help him write an affidavit to, quote, get it off his chest, unquote. What that means is that Hernandez came forward. Smith and Nash never came forward. They were here the whole time, and it was just... How did he come forward? He met Ortiz's mother on the street, and they talked about this. I mean, he didn't come forward. He didn't volunteer in Ortiz. Well, actually, I think he did. He went to the mother, and he said that he was afraid for 10 years of gang retaliation, and that he felt that he needed to do this because he knew that Ortiz was not guilty of the shooting. So he went to the mother of Mr. Ortiz and told her what he knew, and then an affidavit was prepared. My understanding is different. My understanding is that she met him on the street. He went and found her. That's what I understood. But really, I don't know that it's not the same case, but... I think one thing that I do... And I remember who the trial judge was, and he used the wrong standard, and he said that this was cumulative of all the evidence presented at trial, which was not the standard, and it was wrong. The guy was not cumulative in any way, shape, or form because he directly contradicted the two eyewitnesses that allegedly said that Ortiz was the offender. I mean, whatever. It doesn't matter. This case isn't really about Cato either, as far as I'm concerned. No, it's not, Your Honor. This just addresses the question. But it's about whether or not there's enough evidence that would put the decision in a different light, and whether when the judge made his decision, whether he manifests the error. And manifest error, like I said, is where it's not based on the evidence. It's arbitrary and unreasonable. And here you have a trial court that has multiple clear reasons why this case, why Smith testified incredibly. He described the inaccurate explanations of the defendant's appearance, which differed from the shooter, constantly changing his timeline of events, inconsistent accounts of his initial interview, inability to give a logical explanation for his past actions. And if I may end with that, Your Honors, I do want to emphasize this because it deserves special consideration. And that's this. According to Smith, right, he says that he had two conversations with the investigators. One, he changes the timeline, but he's referring to one that does happen ten days after the shooting, and another one that happens before the trial. And in both of those, according to Smith, the detectives showed a picture to Smith of the defendant and said, is he one of the shooters? And Smith never said no. You have to ask yourself, why? Why didn't he say, nah, you got the wrong guy? It doesn't make sense, especially because Smith's now claiming that he had a cordial relationship with the defendant. They never had any issues. He knew the defendant from the defendant's daddy's candy store. Why would he hang an innocent man out to dry for a murder? It makes no sense. And what makes even less sense is the reason he attempts to give when he's put, when that question is put to him, when he's asked, why didn't you just say no? He says, because my reputation in the neighborhood I'm from, I would have handled it myself. But exonerating somebody I don't think would hurt anybody in any neighborhood. If he said, that guy didn't do it, I don't think anybody in the neighborhood is going to criticize him for saying that he didn't do it. On the other hand, there's a lot of pressure when witnesses do identify someone, because then they're considered a snitch, or they're considered a jerk, or they're considered, you know, you shouldn't be identifying him, and we're going to get you for doing this. But to say that somebody didn't do it is totally different. Right. Absolutely. I just want to point out that saying that explanation applies to a completely different scenario. That explanation should have allowed him to say no, because if he's going to handle it himself on the street, then even if the defendant was the shooter, Smith should have said, no, that's not him. So that way the defendant gets released, and Smith can handle it all he wants on the street. It's an illogical explanation, and as I said before, the 21-page decision of this trial court, quote, inaccurate descriptions, inconsistent assertions, illogical explanations, unquote. That's what Smith's testimony was. The burden is on the defendant to show manifest error. The defendant did not meet that burden. He cannot meet that burden. And so we ask this honorable court to affirm the trial court's denial of his post-conviction petition. All right. Thank you. Your Honors, I have just a few brief points. Counsel said that the State's evidence would be even stronger at a new trial, because Smith was the defendant's initial accuser. However, there was no testimony at trial or at the third stage hearing that proved that Smith was an initial accuser. Did Smith identify somebody in the lineup or in a photo array? He was shown a photo array, and he testified at the third stage hearing that I don't believe he did. I don't believe he did to the police. He said at the third stage hearing I think that he was asked or shown a photo, but he didn't say one way or the other whether the defendant was a shooter. Well, is there any evidence in the record that he did identify a photo? I'm sorry, Your Honor. I can't remember if Detective Cato specifically said that a photo was identified. All that Cato said, actually. Smith didn't testify, so he wasn't actually allowed to. So Cato wasn't allowed to testify about that. Cato said he spoke to Smith, and then he was looking for Williams afterwards, but we don't know specifically what was said. The police didn't memorialize any of Smith's statements if he gave one. Even if he was the first person to somehow discuss Williams with the police, Smith didn't necessarily know that fact. Isn't there something, though, really basically illogical, unbelievable, and incredible for a person to say he's not the one and say it 15 years after the fact? Why wouldn't he tell the police immediately that you've got the wrong guy? Isn't there something basically incredible, faulty, flawed about a human being letting someone sit in jail for 10 years and then say you've got the wrong guy? It does pose a little bit of a credibility problem, but I don't think it means that there shouldn't be a new trial granted in the instant case. But the judge found that he was incredible in a number of ways. And is there anything manifestly erroneous about saying why would somebody let someone else, an innocent person, sit for almost 15 years to then tell someone, oh, you've got the wrong guy? It does pose a little bit of a credibility problem. But even in the neighborhood, is anybody going to fault someone when they come in and say, you've got the wrong man, you've got the wrong shooter? Is anybody going to be considered a snitch under those circumstances? It's probably less likely. Well, how could you be a snitch if you're saying that person didn't do it? A snitch is when you tell on somebody. But when you say you've got the wrong person, you're charging the wrong man, you've got an innocent person here. Who is going to criticize someone for doing that, for being forthcoming and saying, don't charge the wrong person? Maybe Smith just didn't want to talk to the police at all. Maybe he didn't know if he would or would not be criticized for that. Well, of course, you haven't lived in the hood and in those neighborhoods, and you don't know how people are. Well, I know she hasn't lived in those neighborhoods. Significantly, Smith has no motive now to testify in favor of Gafer Williams. The state posed a trial that Smith was the intended target, so why would he? What was his reason for coming forward now? Smith ran into the defendant's brother, and there was some conversation about the case, and so then Smith signed an affidavit with the public defender's investigator. Just that he didn't provide necessarily a specific reason, other than he knows that the defendant was not the shooter. I'd also like to point out as a final point that I agree that the trial court's language, in its opinion, describes the standard accurately, but the court didn't accurately apply it based on the facts at the third stage hearing. The court required the new witnesses to have no credibility problems, and that would be to a higher standard than what Illinois Supreme Court cases have held in the past. For those reasons, Williams requests that this court grant a new trial. Thank you.